1998 OK CIV APP 187

**Michael and Stella ROBINSON, individually and as next of kin and guardian of Michael Rogers Robinson, III, a deceased minor, Plaintiffs/Appellants,**

v.

**Phillip Dale RHODES and Suzie Diane Clark (Rhodes), individually and d/b/a A Child's Place Daycare; Rhodes and Clark Investments, Inc., and Kenneth Ray Stout, Defendants,**

and

**State of Oklahoma, ex rel. Department of Human Services, Defendant/Appellee.**

No. 91,707.

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 20, 1998.

Certiorari Denied Dec. 9, 1998.

Rick W. Bisher, Boettcher, Ryan & Martin, Oklahoma City, for Plaintiffs/Appellants.

Joseph W. Strealy, Assistant General Counsel, Department of Human Services, Oklahoma City, for Defendant/Appellee.

## OPINION

ADAMS, J.

¶1 After their son, Michael, III, was killed when he was struck by a car allegedly driven by Kenneth Stout, Michael and Stella Robinson (Parents) sued Stout, Philip Rhodes and Suzie Clark. Parents alleged Rhodes and Clark (Owners) recklessly operated the daycare facility in which their son was enrolled, thereby allowing their young son to be on the roadway where he was struck. Seven months later, Parents amended their petition to allege negligence by the Oklahoma Department of Human Services (DHS) in allowing violations of state child-care regulations to remain uncorrected.

¶2 DHS filed a Motion to Dismiss, arguing, *inter alia,* that it was exempt from liability under the Governmental Tort Claims Act, 51 O.S.Supp.1994 § 151, *et seq.* (the GTCA). Specifically, DHS argued that its actions in this case fell within exemptions from liability outlined in §§ 155(12) and 155(13) of the GTCA.[1] These sections generally cover actions involving the licensing power or function and the inspection power or functions.

In response, Parents argued that they were not alleging their son's death was caused by DHS' failure or negligence in licensing or inspection but by DHS' failure to take any steps to enforce its regulations and require immediate correction of the violations which it found during inspections. The trial court granted the DHS motion and made the appropriate findings and directions under 12 O.S.Supp.1994 § 994 to make its order final and appealable.

¶3 Parents draw a distinction without a difference. The enforcement mechanism available to DHS to enforce compliance is part of its licensing and investigating functions authorized by the Oklahoma Child Care Facilities Licensing Act (the OCCFLA), 10 O.S.Supp.1995 § 401 *et seq.* Under § 406 of the OCCFLA, DHS is required to conduct periodic inspections of child care facilities, and under § 406(C)(2), if DHS "determines that there has been a violation and that the violation has a direct impact on the health, safety or well-being of one or more of the children cared for by the facility, [DHS] shall require immediate correction of the violation." We agree with Parents that, having found violations, DHS has a ministerial duty to "require immediate correction."

¶4 However, the statute does not give DHS the power to take over the facility and operate it, make physical changes to correct violations, or provide additional staff to cure any violations of staffing regulations. Its power is limited to denying or revoking a license and closing the facility down. These powers are all part of the licensing function and power, the exercise of which is within the exemption from liability created by the Legislature in § 155(12) of the GTCA.

¶5 Moreover, the fact that DHS action to exercise that power might have been re-

---

1. These sections provide:
   The state or a political subdivision shall not be liable if a loss or claim results from:
   12. Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority;

13. Inspection powers or functions, including failure to make an inspection, review or approval, or making an inadequate or negligent inspection, review or approval of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety, or fails to conform to a recognized standard;

quired or "ministerial" does not remove it from the exemption.[2] Nothing in the language of § 155(12) of the GTCA makes an exception for "non-discretionary" or "ministerial" exercises of the licensing powers and functions. The Legislature has provided for a general "discretionary act" exemption under § 155(5) of the GTCA. If it intended only "discretionary" exercises of the licensing functions and powers to be exempt, there was no need to adopt § 155(12) of the GTCA because such "discretionary" actions were already exempt under § 155(5) of the GTCA. We will not presume the Legislature adopted a provision which was unnecessary. *See Hill v. Board of Education, District I–009*, 1997 OK 111, 944 P.2d 930. The trial court correctly concluded that Parents' claim against DHS resulted from its licensing functions and powers and that DHS was exempt from liability under the GTCA. It was clear beyond doubt that Parents could prove no set of facts under the circumstances which would have established a claim against DHS. Accordingly, the trial court's judgment dismissing Parents' claim against DHS is affirmed.

AFFIRMED.

HANSEN, J., and BUETTNER, P.J., concur.

---

**2.** According to headnote number 2 created by West Publishing for *Randell v. Tulsa Independent School District No. 1*, 889 P.2d 1264, 1265 (Okl. App.Div.1,1994), "[g]overnmental exemptions apply to discretionary functions including policymaking and planning decisions, although exemptions do not apply to negligent performance of a policy. 51 Okl .St.Ann. § 155, subd. 5." However, the headnote is not reflective of the language of the opinion. In discussing the "discretionary acts" exemption contained in § 155(5) of the GTCA, the *Randell* Court actually said, "[p]rotected discretionary functions include the policy making and planning decisions, although not negligent performance of the policy." 1994 OK CIV APP 156, ¶ 8, 889 P.2d at 1267. Contrary to the implication of the headnote, *Randell* did not hold the exemptions contained in the GTCA did not apply to negligent performance of policy, *i.e.* ministerial acts.